UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASURAGEN, INC.,

    Plaintiff,

v.

ACCURAGEN, INC.,

    Defendant.

Case No. 16-cv-05440-RS

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

In this trademark infringement action, defendant Accuragen moves for summary judgment on all of plaintiff Asuragen's claims, arguing that the undisputed facts would not permit a rational trier of fact to find Accuragen's use of its mark is likely to cause confusion. For the reasons set forth below, Accuragen's motion is denied.

## II. BACKGROUND

Accuragen was founded in August 2013 by former Stanford researchers to develop highly advanced cell-free DNA sequencing technology for personalized cancer treatment. *See* Declaration of Anthony Weibell ("Weibell Decl.") Ex. 14. About a year after its founding, Accuragen was acquired by a foreign parent company. As part of this transition, Accuragen ceased contracting with any customers and became the research and development arm of its new parent company. According to Accuragen, that company has invested millions of dollars in building a strong, international brand around the ACCURAGEN name, which is protected by foreign

trademark rights. Other than the R&D presence of Accuragen in California and its participation at conferences that are held in the United States, Accuragen avers that its parent company does not engage in commerce in the United States and has no current plans to do so.

Asuragen is a molecular diagnostics company that was founded in 2006 by Dr. Matt Winkler. Declaration of Lynn Hohfield ("Hohfield Decl.") ¶¶ 3, 6. Since 2006, Asuragen has used the ASURAGEN trademark in the United States in connection with its research and analysis services relating to detecting genetic mutations in the human genome, as well as the sale of products for the testing and screening of such mutations. *Id.* ¶¶ 9-12. At present, Asuragen's products include oncological kits that employ methods ranging from older technologies such as quantitative polymerase chain reaction (qPCR) to droplet digital PCR (ddPCR) to next generation sequencing (NGS) techniques—all of which are used to detect, monitor, or predict therapies to combat cancer and/or diagnose a patient's risk of developing cancer or risk of a cancer reoccurring. *Id.* ¶¶ 15-16. Asuragen also offers services such as clinical testing, including next generation DNA and RNA sequencing, assay development, regulatory filings, manufacturing and commercialization. *Id.* ¶ 17. The ASURAGEN mark appears on all products and services sold and offered by Asuragen, and is presented to the public both in its logo form and in plain text only. *Id.* ¶ 12, Ex. A. Asuragen owns a federal registration for the ASURAGEN mark, Reg. No. 3,415,931, registered on April 22, 2008, for "Reagents and/or buffers, sold separately or in laboratory kit form, for testing and screening of genetic mutations, infectious diseases, oncological diseases, blood diseases, and immunological disorders" in International Class 5 and "Biological research and analysis" in International Class 43. *Id.* ¶ 13, Ex. B.

Asuragen first learned of Accuragen's existence in Spring 2016, upon receiving an email from GenomeWeb, an industry newsletter, alerting Asuragen to Accuragen's presence in the market. Hohfield Decl. ¶ 27. Based on concerns about confusion occurring in the marketplace, Asuragen sent a demand letter to Accuragen in May 2016. The parties attempted to work out a resolution between May and late August 2016. That being unsuccessful, Asuragen filed this action on September 23, 2016. *Id.* ¶ 33. Asuragen asserts it is harmed by Accuragen's allegedly

infringing activity, experiencing loss of control over its reputation and public perception, and loss of potential customers. Asuragen's complaint asserts three claims: (1) trademark infringement under Section 32(1) of the U.S. Trademark ("Lanham") Act, 15 U.S.C. § 1114(1), (2) false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and (3) unfair competition under Section 17200 of the California Business and Professional code. Compl. ¶¶ 30-49.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Rule 56(e) (2010).

## IV. DISCUSSION

The test for trademark infringement under state, federal, and common law is whether (1) the plaintiff owns a valid and prior-used trademark, and (2) the defendant is using a similar trademark likely to cause confusion as to the source, affiliation, or sponsorship of defendant's products or services. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046-47 (9th Cir. 1999); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). Because Accuragen does not dispute the validity of the ASURAGEN trademark, or the fact that Asuragen has priority, a determination on Accuragen's summary judgment motion turns on the likelihood of confusion issue. To determine whether there is a likelihood of confusion between the parties' goods and services, courts in this Circuit apply the eight-factor test articulated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), which evaluates "(1) strength of the

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 16-cv-05440-RS

4

mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005) (listing the *Sleekcraft* factors). The Ninth Circuit has "long cautioned" that applying these factors "is not like counting beans," and this is "not a rote checklist." *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015). Rather, "[s]ome factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Id.* (quoting *Brookfield*, 174 F.3d at 1054). The eight-factor list "does not purport to be exhaustive, and non-listed variables may often be quite important." *Brookfield*, 174 F.3d at 1054.

Given the highly fact-intensive nature of the *Sleekcraft* inquiry, "summary judgment on 'likelihood of confusion' grounds is generally disfavored." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012). Although Accuragen asserts courts "routinely" grant summary judgment in favor of defendants in trademark cases on likelihood of confusion grounds, the Ninth Circuit has cautioned district courts to "grant summary judgment motions sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901-02 (9th Cir. 2002), *superseded by statute on other grounds*, 15 U.S.C. § 1125.

Accuragen contends that it is entitled to summary judgment based on several independently dispositive factors, obviating the need to analyze the remaining *Sleekcraft* factors thoroughly. *See Multi Time Machine*, 804 F.3d at 939. *Multi Time Machine* concluded the *Sleekcraft* multi-factor inquiry was not particularly well suited to the facts before the panel, which unlike *Sleekcraft*, did not involve claims of infringement between two competing marks. Rather, the plaintiff claimed that a search for one of its products on defendant Amazon's website yielded search results that introduced confusion as to whether the products displayed were produced by Multi Time Machine or its competitors. For that particular reason, the panel found all that was required to resolve the infringement claim was to examine the webpage at issue and the relevant

consumer. *See Multi Time Machine*, 804 F.3d at 937. This case presents a factual scenario far more similar to *Sleekcraft* itself, and therefore the factors highlighted by Accuragen are not necessarily dispositive and must be weighed against other relevant issues.

### A. Type of Goods and Degree of Care Exercised by Purchasers

As a general rule, sophisticated consumers, such as "expert buyers" or purchasers of "expensive items," are thought to be more discerning and thus less likely to be confused. *Brookfield*, 174 F.3d at 1060; *see also Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537 (9th Cir. 1989); *M2 Software*, 421 F.3d at 1084-85; *In re AccuraScience LLC*, No. 86158955, 2015 TTAB LEXIS 193 at *23 (T.T.A.B. June 15, 2015). Following this principle, Accuragen asserts that its hypothetical customers would be "medical professionals and researchers" who are "highly educated, responsible, and sophisticated individuals who often head organizations or teams of medical researchers and are responsible for their budgets and results." Declaration of James Ford, M.D. ("Ford Decl.") at 1. According to Accuragen's expert, who is a medical oncologist and geneticist, contracting for oncological genomic sequencing services is a detailed, expensive, and involved process. Potential customers, such as medical doctors and researchers, would be familiar with the exact type of technology used in a given company's sequencing services and thus would be less likely to be motivated by brand names or marketing materials. *See* Ford Decl. at 5.

Although Accuragen presents a reasonable argument that customer sophistication is likely to mitigate confusion between the parties' products and services, sophistication alone "will not preclude a finding that confusion is likely." *Sleekcraft*, 599 F.2d at 353; *see also Brookfield*, 174 F.3d at 1060 ("confusion may often be likely even in the case of expensive goods sold to discerning customers"). Aside from *Multi Time Machine*, which is not congruent with the facts of this case, Accuragen does not provide any authority where summary judgment was granted based on the degree of care factor alone.[1] Therefore, while the sophistication and diligence of potential

---

[1] Accuragen relies on *Multi Time Machine* to argue that its clear labeling of all marketing materials avoids likely confusion. Because, as explained above, *Multi Time Machine* presented a

customers clearly favors Accuragen's position, this factor must be considered in concert with other *Sleekcraft* factors.

### B. Evidence of Actual Confusion

"Evidence of actual confusion constitutes persuasive proof that future confusion is likely." *Thane Int'l*, 305 F.3d at 902 (citation and internal quotation marks omitted). Accuragen argues that Asuragen's failure to produce any likelihood of confusion survey or present expert testimony on the likelihood of confusion issue warrants a presumption that this evidence would have refuted Asuragen's claims. *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. 11-1309, 2013 U.S. Dist. LEXIS 24824 at *25-26 (C.D. Cal. Feb. 21, 2013) ("Plaintiff failed to provide a customer survey showing a likelihood of confusion, which 'warrants a presumption that the results would have been unfavorable.'").

Asuragen responds that a consumer survey is not necessary to show actual confusion. According to Asuragen, a presumption that survey results would have been unfavorable to its position is unwarranted because a survey was not possible due to lack of access to a statistically significant number of customer respondents. Declaration of William Albrecht ("Albrecht Decl.") ¶ 29. Asuragen also points to three specific incidents of actual confusion; by a Ph.D. job applicant, a recruiter, and by Accuragen's own expert. Hohlfield Decl. ¶¶ 32-36. Although there are no documented incidents of actual confusion on the part of customers or potential customers, evidence of non-consumer confusion may be considered where such confusion sheds light on the likelihood of customer confusion (such as when non-consumer confusion serves as a proxy for, or increases the possibility of, consumer confusion.) *See Rearden*, 683 F.3d at 1214-15. Here, because the two companies engage in what appears to be relatively similar research, evidence of confusion by individuals in the field, even if not potential customers, could demonstrate confusion

---

very different factual scenario from the case here, Accuragen's clear labeling argument is misplaced. Asuragen does not accuse Accuragen of using Asuragen's mark in such a way to mislead customers as to the origin of the products advertised, as was the case in *Multi Time Machine*. As such, clear labeling is not a defense to the type of infringement claim alleged by Asuragen.

1   in the marketplace. That being said, without any concrete evidence of customer confusion, this

2   factor favors Accuragen.

### C. Similarity of the Mark

Contrary to Accuragen's assertions, some *Sleekcraft* factors, such as similarity of the marks, will always be important. *See Brookfield*, 174 F.3d at 1054. Marks are judged by their "sight, sound, and meaning." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993). The trademark is not judged by an examination of its parts, but rather "the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace." *Id.*

The visual subfactor slightly favors Accuragen. Although "Accuragen" differs in spelling from "Asuragen" by only two letters, the two marks in logo form feature very distinct color schemes and typeface. Accuragen's mark, in logo form, is rendered in dark red, featuring a wavy lines through the "A" letter and a capital "g." By contrast, Asuragen's mark is rendered in dark gray type, in a different typeface, and with a light blue and orange shape above the text.[2]

The sound factor slightly favors Asuragen. While acknowledging the similarity between "Accuragen" and "Asuragen," Accuragen argues that when the same descriptive suffix "gen" is disregarded, the remaining "accura" and "asura" are unlikely to be confused by anyone. According to Accuragen, when read phonetically, the names also sound different because of the clear distinction between the soft "sh" sound in Asuragen and the hard "ck" sound of Accuragen, and because "Accuragen" is pronounced with an emphasis on the first syllable as opposed to the second syllable as in "Asuragen." This argument is unconvincing as a jury could easily find that the overall audible similarity between the two names is sufficient to introduce confusion.

---

[2] Asuragen attempts to minimize this subfactor by pointing to evidence that Asuragen does not always present its mark in logo form, such as on invoices to customers. Deposition of James Ford, M.D. ("Ford Depo.") at 57:8-65:21; Declaration of James Weinberger ("Weinberger Decl.") Ex. F. This evidence does not render the logo unworthy of examination, as Asuragen cannot show through these few invoices that Accuragen does not generally present its mark in logo form to the public.

In terms of meaning, Accuragen's expert is prepared to testify that the two marks are not spelled the same way and derive from different root words "accuracy" versus "assurance." Ford Decl. at 10-11. Because the "gen" portion of both company's names is common to many companies in the genomics field, Accuragen contends that this component of the name should be disregarded for similarity purposes. Although Asuragen objects to any analysis that does not take into account the "gen" ending, it would be frankly disingenuous for Asuragen to deny that "gen" is a descriptive term signifying "genomics." Because Asuragen is not entitled to exclusive use of the "gen" name component, infringement analysis must focus on the alleged similarity between "asura" and "accura." Even accepting Asuragen's position that "asura" is an abstract term not derived from any existing root word, there is a cognizable difference between Asuragen's abstract prefix and Accuragen's evocative prefix. Therefore, the meaning factor slightly favors Accuragen.

### D. Proximity of the Goods

"Related goods are generally more likely than unrelated goods to confuse the public as to the producer of the goods." *Brookfield*, 174 F.3d at 1055-56. Accuragen argues that although the parties participate in the same general industry of cancer diagnostic technology, the key products and services they provide are sufficiently distinct to eliminate confusion. Accuragen's experts are prepared to testify that the cancer diagnostic kits for which Asuragen is known are not "closely related" in the minds of consumers to the "cell-free DNA liquid biopsy genomic sequencing services" performed by Accuragen. Declaration of Roger Klein, M.D., J.D. ("Klein Decl.") at 6; Ford Decl. at 6-7. Accuragen also contends that the process of purchasing Asuragen's kits and contracting for the lab services provided by Accuragen are completely different. *Id*.

Accuragen's arguments, however, "overemphasize[] differences in principal lines of business" rather than focusing on the key question of "whether the consuming public is likely somewhat to associate [defendant's] products with [plaintiff]." *Brookfield*, 174 F.3d at 1056. Even if Accuragen were correct that Asuragen did not offer the specific type of service in which Accuragen specializes (cell-free DNA liquid biopsy genomic sequencing), the record supports an inference against characterizing the parties as "non-competitors." In particular, Asuragen draws

attention to a grant presentation produced by Accuragen that demonstrates the company considered Asuragen a player in its "competitive landscape." Deposition of Shenrong Lin ("Lin Depo.") at 89:16-90:24; Weinberger Decl. Ex. G at 10. Accuragen's emails also show that in 2014, Accuragen's employees were talking to people who "brought up [Asuragen] many times," to which Accuragen's employees would respond that Asuragen "had nothing new" and Accuragen's system would be better. *Id.* Ex. M. Other emails show that Accuragen's executives tracked Asuragen's research and business practices and sought to adapt them to Accuragen's own practices. *Id.* Exs. N-Q. Accordingly, there is a genuine issue of material fact as to whether the parties compete directly, thus weighing against summary judgment on likelihood of confusion grounds.

### E. Strength of the Mark

Asuragen argues that summary judgment is not appropriate because the ASURAGEN mark is conceptually and commercially strong. According to Asuragen, the ASURAGEN mark is a coined, made-up word and is thus "fanciful" and entitled to the highest level of protection. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). The mere fact, however, that a mark consists of a coined term does not automatically render that mark fanciful. *See Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625 (2005) (citing *Interstellar Starship Servs. Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999). "Fanciful marks have no commonly known connotation to the product at hand." *Surfvivor Media*, 406 F.3d at 632 (citing "Kodak" cameras by way of example). The "gen" suffix of the name "Asuragen" is evocative of "genetics," which reflects the field that Asuragen occupies. Because "Asuragen" "requires some imagination to associate" it with the company's genetic testing technology, it is properly characterized as a "suggestive mark worthy of some protection." *Id.* (citing *Entrepreneur Media*, 279 F.3d at 1142 & n.3).

Asuragen also asserts that its mark is commercially strong, having been used for more than ten years in connection with the company's successful molecular diagnostics business. Accuragen counters that the ASURAGEN mark is not strong in the specific area of cell-free DNA biopsy

analysis, which Accuragen views as its key specialty. The record, however, demonstrates that within the more general field of molecular diagnostic testing, a rational factfinder could conclude that the strength of Asuragen's mark warrants significant protection. Overall, this factor weighs in favor of Asuragen.

### F. Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Accuragen argues that this factor carries less weight because to the extent the parties share marketing channels, those are common to numerous companies in addition to the parties involved. *See Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1018-19 (N.D. Cal. 2015) (finding that shared advertising via the internet was not dispositive because most companies today engage in online marketing). Here, the parties' marketing channels are narrower than generic internet advertising. Given evidence in the record that the parties market through the same industry publications and appear at the same conferences, there is a genuine issue of material fact as to whether there is significant overlap in marketing channels. Therefore, this factor favors Asuragen.

### G. Defendant's Intent in Selecting the Mark

Relying again on *Multi Time Machine*, Accuragen argues that its intent in selecting the ACCURAGEN mark is not important because it clearly labels its products and services. Again, because the facts of this case are not analogous to *Multi Time Machine*, the intent factor cannot be disposed of so easily, particularly because the parties do not dispute that ACCURAGEN is the junior mark. Accuragen's founders claim that they did not consider Asuragen's name when they were formulating a name for their new venture. Declaration of Zhaohui "Johnny" Sun ("Sun Decl.") ¶ 4; Lin Depo. at 217:7-10, 252:10-253:4. The founders acknowledge the possibility that they came across the Asuragen name by way of an email newsletter, but they do not believe they were aware of the name at the time of the company's founding. Sun Decl. ¶ 4; Lin Depo. at 223:11-14, 250:21-24. Although they later "lamented" the similarity between the names, Accuragen's founders purportedly did not consider changing the name because they did not

1 believe there was a risk of confusion. Accuragen reads these facts as demonstrating innocence, but
2 a reasonable factfinder could find bad faith in the continued use of a mark known to be similar to a
3 competitor's mark. In any case, given the existence of other similarities between the marks and
4 evidence demonstrating that the proximity of the parties' goods and services, Accuragen's
5 purported good faith in selecting its mark is relatively inconsequential and will not necessarily
6 defeat a claim of trademark infringement.

### H. Likelihood of Expansion of Product Lines

Accuragen asserts that Asuragen has offered no evidence beyond mere speculation that the two parties currently compete for customers or that they will do so in the future. *See* Ford Decl. at 11 ("The technologies and services that each company offers are vastly different and a typical medical professional or oncological researcher would exercise enough care in the decision-making process to eliminate any potential confusion before purchasing services from these companies."). Asuragen contends that this factor is unimportant in light of the similarities identified elsewhere in its opposition. Because neither party has put forth substantial evidence on this point, this factor will be treated as neutral.

### I. Weighing the *Sleekcraft* Factors

While a close call, a rational factfinder could conclude, based on the factors analyzed above, that the auditory similarity of the marks and proximity of products/services supports a finding of trademark infringement. For that reason, Accuragen's summary judgment motion is denied.

### J. Asuragen's Claims for Monetary Relief

Accuragen asserts that it is entitled to summary judgment on Asuragen's claims for monetary relief because Asuragen has produced no evidence of actual damages, no evidence of ill-gotten profits from willful intent to cause confusion, and no evidence of an ownership interest in any money received by Accuragen. *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d, 1067, 1081-83 (granting summary judgment on monetary claims where such evidence was lacking). Accuragen contends that Asuragen waived any right to monetary relief by failing to furnish an

expert report disclosing its calculation and theory of damages and disgorgeable profits. Asuragen responds that it is not barred from recovering profits because the record reflects Accuragen received revenue of $41,252.75 in 2014 from offering its services to U.S. consumers. Weinberger Decl. Exs. F, I; Sun Decl. ¶ 7. Although Accuragen denies profiting from the quoted revenue, the existence of a factual dispute on that point precludes summary judgment on Asuragen's claims for monetary relief.

### K. Asuragen's Request for Injunctive Relief

Accuragen also seeks summary judgment on Asuragen's claims for injunctive relief because there is no infringing activity in the United States to enjoin. According to Accuragen, the company's entry into the U.S. market is purely speculative and therefore insufficient to support an injunction. *See Falcon Stainless, Inc. v. Rino Cos.*, No. 08-00926, 2011 U.S. Dist. LEXIS 160984 at *65 (C.D. Cal. Aug. 2, 2011) (denying permanent injunction where "testimony that [infringer] could return to using [infringing] mark at some point in the future is insufficient" to support an injunction). Accuragen also asserts that an injunction may not seek to prevent a defendant from using the asserted mark outside of the United States. *See Gallup, Inc. v. Bus. Research Bureau (PVT.) Ltd.*, 688 F. Supp. 2d 915, 926 (N.D. Cal. 2010) (denying permanent injunction where defendant's "activities occurred in wholly foreign commerce, and any effects they had on United States commerce . . . were incidental and insignificant"). Nor may an injunction seek to control the activity of a party not before the court—Asuragen cannot prohibit Accuragen's foreign parent company from using the ACCURAGEN mark on its own website and elsewhere.

Asuragen disputes the notion that there are no current activities in the United States that can be enjoined. Accuragen is promoted at industry conferences in the United States, its executives have business cards written in English that they distribute in the United States, and it has an office with exterior signage in Menlo Park, California. *See* Weibell Decl. Exs. 16, 18. Accuragen's 30(b)(6) witness also testified that either he or Accuragen's president, both based in California, is the "registrant" of the accuragen.com domain name, *see* Deposition of Zhaohui "Johnny" Sun ("Sun Depo.") at 156:12-15. Moreover, Accuragen's president testified that there

have been discussions in 2017 amongst the company's executives about "whether and how" Accuragen should offer its products and services again in the United States. Lin Depo. at 187:9-23, 190:5-11. Accordingly, Asuragen can demonstrate the existence of some activity in the United States that could potentially be subject to an injunction should it prevail on its infringement claims.

Asuragen also contends that the Lanham Act may reach foreign activities if a three-part test is satisfied: "(1) the alleged violations . . . create some effect on American foreign commerce; (2) the effect [is] sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce [are] sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority." *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016) (citing *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010)). The facts in the record, however, do not indicate that the alleged violations by Accuragen meet this rigorous test. Asuragen has put forth no evidence whatsoever that Accuragen is producing products or services abroad that are somehow flowing back into the United States. *Hallatt*, 835 F.3d at 969. For that reason, to the extent an injunction issues in connection with Asuragen's trademark infringement claims, it is highly unlikely that it would extend to foreign activity in this case.

## V. CONCLUSION

For the reasons set forth above, Accuragen's motion for summary judgment is denied.

**IT IS SO ORDERED**.

Dated: January 25, 2018

_____
RICHARD SEEBORG
United States District Judge